**12 CV 03465**

United States District Court
Southern District of New York

------------------------------------------------------------

Doe, )
  ) Civil Action No.
  )
      Plaintiff )
  )
  )
v. ) **COMPLAINT AND DEMAND**
  ) **FOR A JURY TRIAL**
  )
Diana Rita DeNegre and Louis Mark DeNegre; )
  )
  )
      Defendants )
  )

------------------------------------------------------------

## PRELIMINARY STATEMENT

1. This diversity action arises from Defendants' outrageous, persistent, craftily orchestrated campaign to inflict emotional distress upon and slander the plaintiff by disseminating a variety of harmful statements to plaintiffs classmates, teachers, co-workers and acquaintances in violation of the common law of New York.

## THE PARTIES

2. Plaintiff Doe is a citizen of New York residing in Westchester County.

3. Defendants Louis Mark DeNegre (hereafter "Mark") and Diana Rita DeNegre ("Rita") are and at all times relevant were, citizens of Connecticut residing in Woodbridge. They are plaintiff's mother's first cousin and her husband. They have assumed and asserted a leadership role in the family and exploited plaintiff for their own gain as they systematically pursued a network comprised of plaintiff's classmates, teachers, and co-workers from which they and their

RECEIVED MAY 01 2012 PRO SE OFFICE

favored relatives benefitted socially and economically while they harmed plaintiff with deception and slanderous, distressing speech and actions.

## JURISDICTION AND VENUE

5. The jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1332.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). A substantial number of the acts that are the basis of this lawsuit occurred in the Southern District of New York and the amount in controversy exceeds $75,000.

## NATURE OF THE CLAIM

7. Plaintiff has been the victim of a persistent slander and emotional distress campaign orchestrated largely behind the scenes by defendants which not surprisingly produced distress and the inevitable hindrance of plaintiff's progress in all endeavors and as a result suffered substantial psychological and economic injury. The cumulative distress was manifested most severely when plaintiff was hospitalized for depression and anxiety in October 1993 and in February of 2004.

8. By the very harm they caused, the methods they used and the mere fact that they are relatives, defendants have until now evaded a justified and necessary lawsuit.

## FACTS

9. Unbeknownst to plaintiff for many years but deduced over time, defendants had a particularly close alliance with several of plaintiffs first cousins (Jane, Jackie, Susan) who together with another cousin, Linda, constitute a gang like group that is unofficially led by Jackie. One of their mothers, together with Rita, act as fortifiers for the gang. They insist on and enjoy destructive ruleless feuding and took offense when plaintiff did not mirror them,

2

follow their lead or seek to belong and used a variety of psychological abuses such as name calling (e.g., "snob") and intimidation to punish, coerce.

10. Defendant DeNegre's campaign to trash and destroy began in earnest in the summer of 1971 when they invited Plaintiff to be a guest at their home for one week. When Defendant Rita called Plaintiff's mother to invite her, she mislead Plaintiffs mother as to her purpose saying she thought it would be helpful to Plaintiff's mother who was particularly busy that summer. Plaintiff's mother naively accepted the invitation thus Plaintiff was a guest at the defendants' home for seven days and nights.

11. In September, Plaintiff was to be a new seventh grade student at an all girls school where the tuition was i) not easily afforded by plaintiff's parents and ii) at least double what it had been at plaintiffs previous school, which was attended by several of plaintiff's cousins. Although defendant DeNegre's alliance with the cousin gang (described in paragraph 9) was concealed, their hostile attitude toward plaintiff was manifested in subtle and not so subtle ways during Plaintiff's stay at defendants' home.

12. Before the school year began, with intent to distress and perhaps prompt Plaintiff to not attend the school, cousin Jackie flanked by one or more of her sisters stated: "You're not going to make any friends there."

13. During the fall of 1971, defendants duped plaintiff into stating the name of a classmate: Marie. Unbeknown to plaintiff, but deduced after many years, Rita then obtained Marie's telephone number, contacted her mother and, feigning uncertainty, inquired as to whether plaintiff had invited Marie and her family and friends to her home. The answer was as they expected: No, plaintiff had not invited Marie to their home.

14. Upon information and belief, during these early contacts with Marie and her family, Rita gave a substantially false description of the plaintiff and plaintiff's cousins. Echoing them and their mother, Rita blamed Plaintiff for the discord with these cousins, omitted years of conflict that predated plaintiff and misleadingly described the cousins as "less fortunate." The implication of "less fortunate" was obvious, damning, harmful to plaintiff's reputation.

15. Unbeknown to plaintiff for many years (but deduced after reflection upon cryptic, unexpected, jarring utterances, conflicts, and incidents that had occurred and accumulated over the years), Marie thereafter became an angry, obsessed behind the scenes zealous advocate for defendants and their favored relatives doing and saying almost anything to help them socially and economically. Repeating the aforementioned distorted, misleading version of the history and tensions with the cousins and mirroring Rita's initial contact with her family, over the years Marie contacted plaintiff's classmates and co-workers, invited them to defendants home where defendants, along with other cousins, entertained in various ways including venting hate, gossip and nonsense regarding plaintiff. This generated some hostility and a variety of abuses against the plaintiff while assembling a network of people with whom defendants have assiduously but secretively (at least from the plaintiff) maintained a relationship of some kind.

16. Marie's full name as well the names of most if not all of the persons, classmates, teachers and co-workers ("guests" "third parties" "attendees"), to whom slanderous and other harmful statements were uttered are known to defendants and written in defendant DeNegre's address book. Upon information and belief, defendant must know the approximate date and time of the statements and events giving rise to this complaint because, as indicated in

4

paragraph 6, defendants home was the place where they were initially uttered to the guests from the New York City area; defendants encouraged the reiteration of all harmful words shortly after and kept in touch with most of the guests.

17. During the aforementioned gatherings at their home, with intent to make functioning at work and school more difficult for plaintiff, defendants displayed in various ways their hostility toward plaintiff and how much they favored Jackie and her sisters. Each time defendants DeNegre had a gathering at their home, some of the attendees soon thereafter instigated hostile exchanges with Plaintiff, demeaned and confused and distressed Plaintiff in various ways subtle and not so subtle. There were cryptic references, hints and the like. Some of the attendees, without naming the source or revealing that they had been to the defendants home, became adversarial as they confronted plaintiff with statements, information and misinformation that defendants and other relatives had apparently spoken of. All of this tended to produce paranoia, confusion and other psychological stresses in the Plaintiff.

18. Upon information and belief, while a guest at several gatherings at defendant DeNegre's, Jackie, with intent to cause distress stated to plaintiff's classmates and co-workers that she, her mother and her sisters "make fun" of plaintiff. Jackie believes she "makes fun of" plaintiff and tells others that she does so that they will follow her lead and target, victimize, belittle and distress plaintiff. She attempts ridicule to attract attention to herself and feel superior, assert leadership and punish Plaintiff for not conforming; for unspecified wrongs that violate her enigmatic, intimidating code.

19. While plaintiff was employed as a Paralegal, a co-worker questioned Plaintiff as follows without admitting who had goaded her: "Don't you say 'You's,' and 'You's two's." Perturbed and befuddled by this baseless, unwarranted, curve ball query, plaintiff denied. Upon

information and belief, cousin Jackie, with her history of psychological aggression and animosity toward plaintiff and her own preference for saying "Yuz," was the source of the slanderous misinformation that prompted the questioning by the co-worker shortly after attending a gathering at Defendants home. The intent as always was to turn Plaintiff into a target and distress.

20. Defendants, with intent to stigmatize, victimize and humiliate, repeatedly over the years told classmates, teachers and co-workers that plaintiff had been "picked on" in grade school and given "cooties."

21. Plaintiff and other members of her immediate family, repeatedly told defendants that her father abused alcohol. Upon information and belief, Defendants nevertheless have on various dates since 1987, told many people, some of whom who reside or work in the New York area, that Plaintiff's father did not abuse alcohol. Defendants once again slandered and harmed but would not think of putting their very injurious false words in writing.

22. Upon information and belief, on or about January 15, June 15, 1993, and September 1993, without authorization or privilege, defendants Mark and Rita contacted plaintiff's mother's divorce attorney and falsely stated that plaintiff was not truthful about her father, his alcohol related problems and that he was more or less blameless in the marital discord. Defendants would not make their assertions against the plaintiff under oath or in writing thereby once again staying under the radar and dodging responsibility while inducing the attorney's unjustified mistrust, generating conflict and reducing the effectiveness of the representation.

23. Upon information and belief, on or about August 1, 2007, and from time to time since, defendants have stated that plaintiff was unfit to choose a doctor to treat her mother's tumor. As defendant should realize, part of the reason plaintiff searched for another doctor was

6

the defendants behind the scenes influence on the staff at her previous doctor's office. (Defendants had the name of the previous physician and were as usual surreptitiously meddling and interfering.) My mental health and her health at risk, I selected another doctor and fled--a decision and choice that is not regretted. Defendants have outrageously suggested that plaintiff had no right to do this. Defendants insist that Plaintiff is incompetent and does not have the right or capacity to make choices.

24. While exploiting, slandering and distressing Plaintiff, Defendants DeNegre and some of their favored relatives have benefitted socially and economically from the network of people they have assembled over the years which includes Plaintiff's high school classmates. Upon information and belief, Marie's family assisted the husband of defendants niece in obtaining lucrative employment with a securities firm. In addition, the now deceased physician husband of another high school classmate became affiliated with the medical practice of another relative, and was so pivotal to the viability of the practice that it shut down soon after his death at age 49 in 2009. These facts were never volunteered by the defendants but were gradually uncovered by the plaintiff.

25. Plaintiff has no reason to believe the slander and other harmful speech will stop as defendant DeNegre assiduously maintains an association with all or most of the former classmates, teachers and co-workers who attended gatherings at their home. Without judicial intervention, defendants will continue to slander, distort, harass and inflict psychological harm whenever they can and will continue to exploit plaintiff for their own social and economic benefit if they can.

### INJURIES

26. Clinical Depression, anxiety for which I was hospitalized twice: first in October, 1993 and again in February, 2004. Defendants Rita and Mark, behind the scenes, once again

7

masquerading as well intentioned family leaders with vital information for the doctors, entertained and influenced medical staff thereby complicating and prolonging recovery. If not for defendants persistent slander and distress campaign, which was a component of their aggressive pursuit of an ever widening people network for themselves, I would not have been hospitalized.

27. Defendants have asserted themselves in every community, every situation that plaintiff has been in thus they ought to bear responsibility for the harmful effects upon the Plaintiff.

## CAUSES OF ACTION
### Claim I: Slander

28. Doe repeats and re-alleges each and every allegation set forth in the preceding paragraphs of the Complaint as if fully set forth herein. Defendants intentionally or negligently uttered defamatory statements regarding plaintiff to third parties without privilege or authorization and said statements constituted slander per se or caused special harm.

### Claim II: Intentional Infliction of Emotional Distress

29. Doe repeats and re-alleges each and every allegation set forth in the preceding paragraphs of the Complaint as if fully set forth herein. Acting intentionally defendants conduct was extreme and outrageous and the conduct was the cause of severe emotional distress.

### Claim III: Negligent Infliction of Emotional Distress

30. Doe repeats and re-alleges each and every allegation set forth in the preceding paragraphs of the Complaint as if fully set forth herein. Acting recklessly the defendants conduct was extreme and outrageous and the conduct was the cause of severe emotional distress.

## REQUEST FOR RELIEF

WHEREFORE, plaintiff respectfully requests judgment against defendants as follows:

1. an order enjoining Defendants from reiterating the slanderous or emotionally distressing statements complained of herein including saying that plaintiff was or is supposed to invite people to defendants home or similarly worded assertions.

2. an order awarding special damages in an amount to be determined      .

3. an order awarding general damages in an amount to be determined.

4. an order awarding punitive damages in the amount of $3,000,000

5. an order awarding costs of suit and such other and further relief as the court deems just and proper.

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this 30th day of , 20    .

Respectfully Submitted,

Doe,
Plaintiff, Pro Se
P.O. Box 194
Bronxville, NY  10708
email:  doe2481@gmail.com

9

## REQUEST FOR RELIEF

WHEREFORE, plaintiff respectfully requests judgment against defendants as follows:

1. an order enjoining Defendants from reiterating the slanderous or emotionally distressing statements complained of herein including saying that plaintiff was or is supposed to invite people to defendants home or similarly worded assertions.

2. an order awarding special damages in an amount to be determined

3. an order awarding general damages in an amount to be determined.

4. an order awarding punitive damages in the amount of $3,000,000

5. an order awarding costs of suit and such other and further relief as the court deems just and proper.

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this 25 day of April, 2012.

Respectfully Submitted,

*/s/ Doe*

Doe,
Plaintiff, Pro Se
P.O. Box 194
Bronxville, NY 10708
email: doe2481@gmail.com

9